FILED
2016 Sep-23 AM 09:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION**

| | | |
|---|---|---|
| **BOBBIE BILLINGSLEY,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  7:15-cv-00840-RDP** |
| | } | |
| **MERECEDES-BENZ U.S., INTERNATIONAL, INC.,** | } | |
| | } | |
| **Defendant.** | } | |

**MEMORANDUM OPINION**

## I.    Introduction

This case is before the court on Defendant's Motion for Summary Judgment (Doc. # 18), filed May 2, 2016.  The Motion is fully briefed and supported by the parties' evidentiary submissions. (Docs. # 19, 20, 27, 28, 31).

In this case, Plaintiff alleges that her employment was terminated in retaliation for filing an EEOC Charge and in retaliation for being a named plaintiff in a race discrimination lawsuit filed on February 12, 2015. Plaintiff claims her termination violates 42 U.S.C. § 1981. (Doc. #18). Defendant contends that Plaintiff's claim must be dismissed for two reasons: (1) she has failed to establish a *prima facie* case of retaliation and (2) she cannot establish pretext because she was terminated for legitimate, non-retaliatory reasons.  After careful consideration**,** the court concludes that Defendant's Motion is due to be granted.

## II.     Relevant Undisputed Facts[1]

Plaintiff began working for Mercedes-Benz U.S. International, Inc. ("MBUSI" or "Defendant") on October 25, 2004 (Doc. # 20-1 at 9). Plaintiff was employed as a Paint Shop Production Team Member ("TM") and eventually worked in the Interior Sealer Group. (Doc. # 20-1 at 10). Plaintiff remained a member of this group until she was terminated on April 16, 2015. (Doc. # 20-1 at 99-100; Doc. # 20-2 at 7).

As an employee in the Interior Sealer Group, Plaintiff's job consisted of using a paintbrush tool to smooth excess sealer at multiple stations on the production line. (Doc. # 20-1 at 11). Normally, TM's rotate stations every 2 hours and work 4 stations during an 8-hour day. However, Plaintiff had medical restrictions in place that prevented her from raising her left arm above shoulder height. (Doc. # 20-1 at 14). Defendant accommodated these restrictions by allowing Plaintiff to work two stations, rather than the four stations the other TMs were required to work. (Doc. # 20-1 at 11). Plaintiff worked the left and right roof station and the left side engine compartment station. (*Id*.). These stations are classified as "light" work and required Plaintiff to work at chest height or below. (Doc. # 20-2 at 10, 20).

In September 2013, Plaintiff began experiencing problems with her right shoulder while training on the Masking Deck.  (Doc. # 20-1 at 12). Masking Desk work involved putting masking tape around the windows of the cars. (*Id*.).  Defendant had its Plant physician, Dr. Casten,[2] and its ergonomic specialist, Jerry Woods, interview Plaintiff and examine the process

---

[1] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only.  They may not be the actual facts that could be established through live testimony at trial. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

[2] Dr. Casten is certified in occupational medicine, but he is not board certified in orthopedic surgery. (Doc. # 20-2 at 8).

2

she was working at the time. (*Id*.). While they found that the vehicles were positioned too high for Plaintiff, they determined that there was no work exposure that could have caused a shoulder injury. (Doc. # 20-1 at 13). Defendant removed Plaintiff from the Masking Deck within 3 to 4 weeks of her complaint and allowed her to continue working only the other two stations mentioned above. (Doc. # 20-1 at 12-13).

In May 2014, Plaintiff went to see her personal physician, Dr. Atkins at St. Vincent's First, who specializes in rotator cuff surgery**.** (Doc. # 20-1 at 15). He ordered an MRI and ultimately determined that surgery was necessary. (*Id*.). Plaintiff visited Dr. Emblom at Andrews Sports Medicine Clinic in September 2014 and scheduled her surgery for October 8, 2014. (Doc. # 20-1 at 16). On September 3, 2014, Plaintiff picked up short-term disability paperwork from Defendant's Medical Department to cover the time she would need to be off for her surgery. (Doc. # 20-1 at 18). This paperwork included a copy of Defendant's Short-Term Disability Plan ("STD Plan"). (*Id*.).

Under its STD Plan, Defendant offers paid leave for its eligible team members for up to 26 weeks, depending on their length of service. (Doc. # 20-1 at 107; Doc. # 20-3 at 3).[3] The Plan's purpose is to provide benefits to "team members who are unable to perform any duties provided by MBUSI because of a non-work related impairment." (Doc. # 20-1 at 105; *Id*.). As explained in Section V of the Plan, a team member must submit "objective medical documentation showing that the need for benefits is medically necessary and based on a documented impairment as defined by this Plan… ." (Doc. # 20-1 at 108; *Id*.). It is the team member's responsibility to inform the Medical Department about his or her condition, and "if the impairment extends beyond the date initially indicated on the STD claim form, the supporting

---

[3] Plaintiff was entitled to 12 weeks at a 100% of base pay and 13 weeks at 60% base pay, based on her 10 years of service. (Doc. # 20-1 at 107).

medical documentation for the change must be provided to the Medical Department prior to the original return-to-work-date. Team members are ultimately responsible for providing all information requested by MBUSI." (*Id.*) (emphasis added).

All requests for STD benefits are considered by Defendant's STD Review Committee, which consists of Jeff Burbank (HR Manager for Safety, Security and Medical Services) and Carol Davis (Medical Specialist and Registered Occupational Nurse). The Review Committee acts in its sole discretion and "retains the ultimate authority to decide if STD benefits will be granted." (Doc. # 20-1 at 105; Doc. # 20-3 at 1-4). As mandated by the Plan, the STD Review Committee "relies on the Medical Disability Advisor to determine how long a team member should be off work for a particular impairment." (Doc. # 20-1 at 109; Doc. # 20-3 at 4). The Medical Disability Advisor provides the minimum, optimum, and maximum lengths of absence for various medical procedures and illness**es** based on the level of work the employee performs. (Doc. # 20-2 at 48-55; Doc. # 20-3 at 19-26).

Under the Plan, STD leave and Family Medical Leave ("FML") run concurrently. (Doc. # 20-1 at 107; Doc. # 20-3 at 5). A team member may not extend STD leave due to a medical condition that is different from the condition originally specified: "Any impairment unrelated to a prior impairment for which STD benefits were granted will be considered a separate occurrence." (Doc. # 20-1 at 106; *Id.*). If a team member does not return to work from an STD leave, Defendant considers the team member to have voluntarily resigned employment. (Doc. # 20-1 at 109; *Id.*). Team members may appeal denials of STD benefits. Appeals are considered by the STD Appeals Committee, which consists of Dr. Casten, David Olive (Sr. Manager of HR) and in-house legal counsel.  (Doc. # 20-1 at 110; Doc. # 20-3 at 6).

Plaintiff submitted paperwork for STD leave and FML in connection with her right shoulder arthroscopic rotator cuff repair.[4] (Doc. # 20-1 at 19; Doc. # 20-2 at 12). The STD Review Committee approved Plaintiff's STD leave beginning October 8, 2014 and ending December 7, 2014, with a return date of December 8, 2014. (Doc. # 20-1 at 21, 73). Plaintiff was notified of her approval by letter dated October 23, 2014. (*Id.*). However, on December 2, 2014, Dr. Emblom determined that Plaintiff was not able to return to work, and he faxed a progress note the next day, notifying Defendant that Plaintiff's work status was to be reevaluated on January 13, 2015. (Doc. # 20-1 at 22; Doc. # 20-1 at 23, 74-75). In response, Defendant requested that Plaintiff's physician fax his dictated office notes to MBUSI for use in consideration of whether to extend Plaintiff's STD. (Doc. # 20-1 at 76).

Mr. Burbank and Ms. Davis initially determined that Plaintiff's STD leave would not be extended because she failed to provide objective medical evidence that would warrant an extension. (Doc. # 20-1 at 27; Doc. # 20-2 at 19). Plaintiff then wrote a letter to Defendant on December 27 appealing her denial of short-term disability extension. (Doc. # 20-1 at 30, 78-80). She provided no additional medical documentation to support her appeal. (Doc. # 20-3 at 7). Defendant nevertheless decided to extend Plaintiff's STD leave through December 22, and sent a letter to inform her of this on January 7, 2015. (Doc. # 20-1 at 31, 81; Doc. # 20-2 at 21; Doc. # 20-3 at 7). Her FML was approved through January 9, 2015, when it was fully exhausted. (*Id.*). On Monday, January 12, 2015, the STD Appeals Committee (Dr. Casten, David Olive, and in-house counsel) met and decided to deny Plaintiff's appeal. (Doc. # 20-3 at 6). Plaintiff received a

---

[4] There is some confusion as to when Plaintiff actually submitted this paperwork—before or after her surgery. There is evidence in the record that Plaintiff submitted documents in support of her request for leave on October 16 and October 22, 2014, and both of those dates were after her surgery. (Doc. # 20-1 at 66-72). Plaintiff nevertheless insists that she submitted the paperwork on September 30, 2014. (Doc. 20-1 at 20). However, outside of her insistence, there is no evidence in the record to support the September submission date.

letter the following day telling her the Appeals Committee's decision remained unchanged. (Doc. # 20-1 at 31, 82).

By letter dated January 20, 2015, Plaintiff's counsel then submitted medical documentation of her January 15, 2015 visit with Dr. Emblom detailing the progress of her recovery and his plan for reevaluation in the upcoming six weeks. (Doc. # 20-1 at 32, 83-84). Mr. Burbank and Dr. Casten reviewed these documents and determined that they did not support a finding of no work for Plaintiff. (Doc. # 20-2 at 20; Doc. # 20-3 at 8). Throughout February and March, Plaintiff had multiple phone conversations with members of Defendant's HR Department during which she was told that she needed to produce objective medical documentation to support an extension of her STD leave. (Doc. # 20-1 at 36-38, 41; Doc. # 20-2 at 20, 22). During Plaintiff's February 26, 2015 visit to Dr. Emblom, he created a work restriction document that stated that she could not return to work before April 28, 2015. (Doc. # 20-1 at 40, 87).

On March 26, 2015, Burbank wrote Plaintiff notifying her that she had exhausted her approved STD and FML time, that her absence from January 12 through March 26, 2015 was unapproved, and that the documentation she had provided did not meet the administrative requirements for continuing her STD leave. (Doc. # 20-1 at 42, 85; Doc. # 20-2 at 23, 63). Burbank also instructed her to (1) provide objective medical evidence sufficient to support the amount of time requested off, perhaps in the form of an MRI or x-ray, by April 3; (2) cover her time away from work with vacation hours; or (3) apply for a personal leave of absence ("PLOA"). (*Id.*).  In response, on April 3, 2015, Plaintiff submitted a written request to use her vacation days to cover her absence and to apply for PLOA. (Doc. # 20-1 at 43, 89-91; Doc. # 20-2 at 64). There was no other medical documentation attached to that request. (*Id.*).

In a letter dated April 7, 2015, Burbank agreed to apply Plaintiff's vacation days to cover her absence through February 9, but he denied her PLOA application because there was no supporting medical documentation. (Doc. # 20-1 at 46, 91; Doc. # 20-2 at 24).  Burbank further notified Plaintiff that if she did not submit other documentation by April 15, 2015, she would be considered to have resigned. (*Id.*). While Burbank testified that PLOAs are reserved for hardships like a house fire, there is nothing in the PLOA policy limiting it to circumstances of hardship. (Doc. # 20-2 at 24-26, 29-30, 69). Under Defendant's PLOA policy, its purpose is to "assist Team Members who need to be absent for personal reasons not otherwise covered." (Doc. # 20-2 at 69). Employees may apply for up to 12 weeks of PLOA time. (*Id.*).

Burbank recommended that Plaintiff's request for PLOA be denied, and David Olive (HR Senior Manager) and Alex Paulus (HR Vice President) agreed. (Doc. # 20-2 at 5, 27, 30-31). Burbank's April 7, 2015 letter to Plaintiff explained that her absences after February 10, 2015 remained uncovered and that she must supply adequate medical documentation justifying additional STD benefits or a PLOA. (Doc. # 20-1 at 46, 91; Doc. # 20-2 at 28-29, 78). On April 13, 2015, Plaintiff faxed Defendant a note from Dr. Emblom from her February 26 visit stating she would be reevaluated in another eight weeks. (Doc. # 20-1 at 92-98). Again, Burbank found this evidence to be subjective, and resolved to recommend Plaintiff's termination to David Olive and Alex Paulus.  (Doc. # 20-2 at 5, 7, 9, 24, 41-42). Plaintiff received her letter of termination on April 16, 2015.[5] (Doc. # 20-1 at 99-100).

On January 8, 2015, while she was on STD leave, Plaintiff filed an EEOC charge of discrimination against Defendant alleging race discrimination. (Doc. # 20-1 at 122). On February 12, 2015, Plaintiff also joined with eighteen of Defendant's employees in a race discrimination

---

[5] Two other employees of Defendant were also terminated for failing to provide objective medical documentation to continue STD leave—James M. Howton and George Davies. (Doc. # 20-3 at 9, 36, 47).

action. (Doc. # 20-1 at 57-58). Plaintiff never discussed either the EEOC charge or the lawsuit with anyone at MBUSI. (*Id*.). At the time of her termination, Burbank was not aware that Plaintiff had filed either the charge or the lawsuit. (Doc. # 20-2 at 4-5). Plaintiff does not know if any of the other plaintiffs in the race discrimination lawsuit have been discharged. (Doc. # 20-1 at 59-60).

### III.   Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56(c) requires the non-moving party to go beyond the pleadings and – by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file – designate specific facts showing that there is a genuine issue for trial. *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("*Anderson*"). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Allen v. Bd. of Pub. Educ. For Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If

8

the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

When faced with a "properly supported motion for summary judgment, [the non-moving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson v. Liberty Lobby, Inc.*, teaches, under Rule 56(c) a plaintiff may not simply rest on her allegations made in the complaint; instead, as the party bearing the burden of proof at trial, she must come forward with at least some evidence to support each element essential to her case at trial. *See Anderson*, 477 U.S. at 252. "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [her] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 248 (citations omitted).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Southwest Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing *Anderson*, 477 U.S. at 250-51).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Sawyer*, 243 F. Supp. 2d at 1262 (quoting *Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999)

("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

## IV.     Discussion[6]

Although the Rule 56 facts may raise questions about how Defendant has administered its leave program with respect to Plaintiff's requests for leave, that is not the precise claim this case presents.  Rather, here, Plaintiff pursues a § 1981 retaliation claim.  Defendant asserts that it is entitled to summary judgment on that particular claim, because Plaintiff cannot show that "but for" her protected conduct, Defendant would not have terminated her employment. (Doc. 19, p. 19 (citing *Univ. of Texas Sw. Med. Cntr. v. Nassar*, 122 S. Ct. 2517, 2533-34 (2013))[7].

Where, as here, a plaintiff relies upon circumstantial evidence of retaliation under § 1981, courts apply the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Crawford v. Carroll*, 529 F.3d 961, 975-76 (11th Cir. 2008). Under this analysis, once a plaintiff has established a prima facie case of discrimination or retaliation, "the burden shifts to the employer to 'articulate some legitimate, nondiscriminatory reason'" for the challenged action. *Crawford*, 529 F.3d at 976 (quoting *McDonnell Douglas*, 411 U.S. at 802). Analyzing whether this burden has been met does not involve a credibility determination, *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509, (1993), and the burden itself has been characterized as "exceedingly light." *Perryman v. Johnson Prod. Co.*, 698 F.2d 1138, 1141 (11th Cir. 1983). So long as the employer articulates "a clear and reasonably specific" non-

---

[6] Title VII and Section 1981 retaliation cases are "analyzed under the same framework," and for this reason the court will rely on cases involving both Title VII and Section 1981 retaliation. *See Willis v. Publix Super Mkts., Inc.*, 619 F. App'x 960, 962 (11th Cir. 2015); *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998)(claims under Title VII and 42 U.S.C. Section 1981 "have the same requirements of proof and use the same analytical framework").

[7] Although *Nassar* was a Title VII retaliation case, its "but-for" standard of causation has been equally applied to 42 U.S.C. § 1981 retaliation cases. *See Brown v. CRST Malone, Inc.*, No. CV-12-BE-3954, 2014 WL 4681363 (N.D. Ala. Sept. 17, 2014)

discriminatory basis for its actions, it has discharged its burden of production. *Texas Dept. of Community Affairs v. Burdine*, 450 248, 254-55 (1981).  And once an employer articulates a legitimate, non-discriminatory reason, "the burden shifts back to the plaintiff to show that the employer's stated reason was a pretext for discrimination." *Id.* (citations omitted).

Defendant argues that summary judgment is appropriate because Plaintiff cannot establish a *prima facie* case of retaliation, and because Plaintiff cannot establish pretext. After careful review of the Rule 56 record and the parties' briefs, and for the reasons set forth below, the court agrees.

### A.       Plaintiff Failed to Establish the Causation Element of her *Prima Facie* case of Retaliation

To establish a *prima facie* case of retaliation under 42 U.S.C. Section 1981, a plaintiff must show that she engaged in statutorily protected activity; she suffered a materially adverse action; and a causal connection exists between the protected activity and the adverse action. *Howard v. Walgreens Co.,* 605 F.3d 1239, 1244 (11th Cir. 2010); *accord Thomas v. Cooper Lighting, Inc.,* 506 F.3d 1361, 1363 (11th Cir. 2007).  Here, Defendant does not dispute that Plaintiff engaged in statutorily protected activities, and also concedes that Plaintiff's termination constitutes an adverse employment action.  Defendant argues that Plaintiff has not established the necessary "but-for" causal connection between Plaintiff's protected activity and the termination of her employment. (*See* Doc. 19, p. 19).  Specifically, Defendant argues that Plaintiff cannot establish the causation element of her *prima facie* case because (1) she cannot establish temporal proximity or decision maker knowledge, (2) she cannot otherwise establish a causal link, and (3) intervening acts broke any purported causal link. (*See* Doc. 19, p. 18-25.). The court addresses these arguments in turn.

**(1)      Plaintiff Cannot Establish Decision Maker Knowledge or Temporal Proximity**

To establish the causal connection element of a *prima facie* case of retaliation, Plaintiff must demonstrate that 'but for' Plaintiff's protected conduct, she would not have been terminated.  Generally, "close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact about a causal connection," but to satisfy this showing, a plaintiff must also establish "that the decision maker was aware of the protected conduct at the time of the adverse employment action." *Brungart v. BellSouth Telecomms., Inc*., 231 F.3d 791, 799 (11th Cir. 2000).  As discussed below, Plaintiff has failed to establish either temporal proximity or decision maker knowledge.

Where temporal proximity is the *only* evidence of causation, that proximity must be "very close." *Thomas v. Cooper Lighting, Inc.,* 506 F.3d 1361, 1364 (11th Cir. 2007) (quoting *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273 (2001)).  In the absence of other evidence tending to show causation, when there is a substantial delay between the protected expression and the adverse action, a retaliation claim necessarily fails. "Showing that an adverse employment action happens within one month of the protected activity satisfies the causation requirement for summary judgment purposes." *Summers v. City of Dothan*, 444 Fed. App'x 346 (11th Cir. 2011); *Donnellon v. Fruehauf Corp.,* 794 F.2d 598, 601–02 (11th Cir. 1986).  However, a two month gap between the two events has been found to be enough of a delay to preclude an inference of causation. *Williams v. Waste Mgmt., Inc.,* 411 F. App'x. 226, 229-30 (11th Cir. Jan. 25, 2011); *see e.g.*, *Thomas v. Cooper Lighting, Inc.,* 506 F.3d 1361, 1364 (11th Cir. 2007) (finding that a period of three months was too long to create an inference of causation,

stating "[a] three to four month disparity between the statutorily protected expression and the adverse employment action is not enough).

Here, the Plaintiff's employment was terminated three months after her EEOC Charge was filed and two months after she joined the lawsuit. (*See* Doc. # 20-1 at 222-24; Ex. 26). However, the cases cited above stand for the proposition that this two-to-three month temporal gap between Plaintiff's protected conduct and her termination cannot *alone* establish causation.

But even if it could be said that the temporal proximity between Plaintiff's protected conduct and the adverse employment action was close enough to raise an inference of causation, "temporal proximity alone is insufficient to create a genuine issue of fact as to causal connection where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct." *Thomas,* 506 F.3d at 1364 (citing *Clover v. Total Sys. Servs., Inc.,* 176 F.3d 1346, 1355–56 (11th Cir. 1999)). A plaintiff must present more than "mere curious timing coupled with speculative theories." *Raney v. Vinson Guard Serv., Inc.,* 120 F.3d 1192, 1197 (11th Cir. 1997).

Here, Plaintiff has failed to present evidence that any decision maker was aware of either her January 2015 EEOC charge or her February 2015 lawsuit. It is undisputed that Plaintiff neither spoke to any decision makers about her January 2015 EEOC charge or the February 2015 lawsuit, nor heard any comments by or from them about her involvement in these protected activities. (Doc. # 20-1 at 224-225; Doc. # 20-2 at 12, 14). Burbank has testified that he was not aware of these events. Similarly, there is no evidence in the record that either Senior Manager of HR David Olive or Vice President of HR Alex Paulus, was aware of Plaintiff's protected conduct when they approved Burbank's recommendation. (Doc. # 20-3 ¶ 38). The record is simply devoid of any evidence whatsoever showing that any of the decision makers had knowledge

about Plaintiff's EEOC charge or the lawsuit at the time the decision to terminate Plaintiff's employment was made. (Doc. # 20-1 at 224-225; Doc. # 20-2 at 12, 14.). Thus, Plaintiff cannot establish causation because she had presented no evidence that the decision makers were aware of her protected conduct. *See Burch v. Coca-Cola Bottling Co. United, Inc.*, 608 F. App'x 916, 917 (11th Cir. 2015), *cert denied*, 136 S. Ct. 1193 (2016) (refusing to impute general corporate knowledge to decision makers).  A plaintiff cannot establish a *prima facie* case of retaliation when the person "recommending" the adverse employment action lacked knowledge of Plaintiff's protected conduct.  S*ee Walton-Horton v. Hyundai of Ala.*, 403 F. App'x 405, 409 (11th Cir. 2010); *see also Burch*, 608 F. App'x at 918.

Apparently recognizing the dearth of evidence on the issue of decision maker knowledge, Plaintiff urges the court to impute knowledge of Plaintiff's protected conduct to Burbank. (*See* Doc. 27, p. 31-32). However, to do so on this record would be wholly inappropriate. The Eleventh Circuit has held that "neither a court nor a jury may impute knowledge to a decision maker who has sworn he had no actual knowledge" where there is no evidence to the contrary. *Summers v. City of Dothan*, 444 F. App'x 346, 352 (11th Cir. 2011) (refusing to impute knowledge to decision maker who denied having knowledge absent evidence to the contrary) (citing *Brochu v. City of Riviera Beach*, 304 F.3d 1144, 1156 (11th Cir. 2002)). Put another way, on a record such as this, the existence of decision maker knowledge turns on actual knowledge, not constructive knowledge. *Silvera v. Orange City. Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001); *Brungart*, 231 F.3d at 800 (for purpose of a FMLA retaliation claim, knowledge of employee's protected conduct could not be imputed to decision maker from other corporate officials' knowledge).

Here, Burbank has given sworn testimony that he was not aware of Plaintiff's 2015 EEOC charge. (Doc. 20-2 at 4-5).  Burbank further testified that he was not aware that Plaintiff had ever filed an EEOC charge against Defendant. Plaintiff has not offered any evidence to refute Burbank's sworn testimony. Instead, Plaintiff labels Burbank's testimony as "dubious" and calls upon the court to make a credibility assessment when there is simply no counter evidence at all to weigh against Burbank's testimony. (Doc. # 27 at 33). Her argument regarding Burbank's "credibility" does not create an issue of fact.  Burbank's sworn testimony that he was unaware of Plaintiff's protected conduct is unrebutted on the record before the court. (Doc. 20-2 at 4-5).

Alternatively, Plaintiff asks this court to assume that Burbank knew of her January 5, 2015 EEOC Charge (a race discrimination failure to promote claim based on events between 2010 and 2015) because, in 2013, Burbank encouraged Plaintiff to bid on jobs consistent with her work restrictions. (Doc 20-2 at 4, 7-8; Doc. 27 at 33). Based on this 2013 discussion with Burbank, and due to his position within the HR Department, Plaintiff makes this unsupported logical leap: "[i]t is clear that Burbank and Roberts would be the Team Relation individuals *with the most knowledge* about [Plaintiff's] claims because they were most familiar with her employment history." (Doc. 27 at 33) (emphasis in original). How this conclusion is "clear" defies logic. The 2015 Charge mentions neither Burbank, nor the 2013 transfer discussion. (Doc. 20-1 at 122). Burbank did not respond to the Charge, nor was it his job to do so. (Doc. 20-2 at 4).[8] Moreover, as Defendant correctly points out, Burbank neither supervised Plaintiff, nor made

---

[8] In a footnote, Plaintiff makes reference a 2011 EEOC Charge she filed that specifically named Burbank as one of the individuals who she believed discriminated against her. (Doc. 27 at 34 n.18; Doc. 28, Pl.'s Ex. 1). Plaintiff also points to a January 24, 2012 letter sent by the EEOC to Defendant's General Counsel requesting that certain employees be made available for interviews. (Doc. 27 at 34, n. 18; Doc. 28, Pl.'s Ex. 7).  To the extent Plaintiff offers this scheduling letter to impeach Burbank's testimony that he was unaware of Plaintiff ever having filed an EEOC charge, Plaintiff's argument is unpersuasive. As discussed above and below, the existence of decision maker knowledge turns on actual knowledge, not constructive knowledge. *Silvera*, 244 F.3d at 1259. As with the

promotion decisions affecting her.  (Doc. 20-2 at 4).  Thus, there is no basis to assume that he would have been consulted about the Charge.

The court declines to impute knowledge to Burbank because there is no *evidence* showing that Burbank had actual knowledge of Plaintiff's January 5, 2015 Charge. *See Silvera*, 244 F.3d at 1259; *Jones v. Flying J, Inc.*, 409 F. App'x 290, 295 & n.8 (11th Cir. 2011) ("evidence showing that the decisionmaker *could have been told* about plaintiff's protected activity is not the same as evidence showing that he was told.") (citation omitted).

Similarly, the court declines to accept Plaintiff's invitation to impute to Burbank knowledge of Plaintiff's involvement in the 2015 lawsuit simply because one paragraph in the Complaint in that case which references Burbank was denied in Defendant's Answer. (Doc. 27 at 32 (citing Case No. 2:15-cv-00259, Doc. 1 at ¶ 53)). Plaintiff argues that in order for Defendant to have denied that allegation, it necessarily had to speak with Burbank about the lawsuit.[9] (Doc. 27 at 32). However, the denial in Defendant's Answer of the five-sentence, compound allegation does not establish that Burbank had knowledge of the lawsuit.  There is no evidence that Burbank was questioned about the allegation, and Defendant may have relied on documents, other employees, or even Burbank's recollection without disclosing the existence of the lawsuit. The denial in this Answer is simply too tenuous to amount to affirmative evidence that Burbank knew of Plaintiff's protected conduct.  To conclude that Burbank had such knowledge based on this denial would require the court to engage in rank speculation.  Speculation and conjecture are insufficient to create a material issue of fact in the face of unrebutted sworn testimony. *See*

2015 Charge, Plaintiff offers no *evidence* that Burbank had any actual knowledge of the 2011 Charge. Therefore, Burbank's sworn testimony stands unrebutted.

[9] Plaintiff may assert that this line of reasoning is speculative, but that both makes and misses the point at the same time.  It makes the point because this line of reasoning follows Plaintiff's own speculative allegation that it only makes sense that because Burbank was referenced in one paragraph of the Complaint, he would have been both (a) consulted and (b) informed about the suit.  It misses the point because Eleventh Circuit case law requires a showing of actual (not merely constructive) knowledge to establish retaliation.

*Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) ("Speculation or conjecture from a party cannot create a genuine issue of material fact.").

Because Plaintiff has failed to establish the necessary causation element of her *prima facie* case, Defendant's Motion for Summary Judgment is due to be granted.

### (2) Plaintiff Cannot Otherwise Establish a Causal Link

Even if the court were to assume the existence of decision maker knowledge, Plaintiff's retaliation claim still fails because the decision to deny Plaintiff's PLOA and STD requests -- which, ultimately, resulted in her discharge -- preceded Plaintiff's protected conduct. "When an employer contemplates a given action before the employee engages in a protected activity … temporal proximity between that action and the employer's knowledge of the protected conduct alone will not suffice to show causation." *Castillo v. Roche Laboratories, Inc.*, 467 F. App'x 859, 862 (11th Cir. 2012) [10]; *see also Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001) (stating that an employer "proceeding along lines previously contemplated … is no evidence what[so]ever of causality"); *Vinnett v. General Elec. Co.*, 271 F. App'x 908, 914 (11th Cir. 2008) ("There is … a lack of causal connection when an employer makes a decision before the protected activity occurs and then proceeds with that decision."); *Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1232 (11th Cir. 2006) (notice of changed hours preceding protected activity negated any causation inference based on close temporal proximity). Moreover, Plaintiff did not "restart" the temporal proximity clock when she requested reconsideration of STD and PLOA because these renewed requests included medical documentation that Defendant had already deemed inadequate. *See Griffen v. GTE Fla., Inc.,* 182

---

[10] Plaintiff, without any attempt to distinguish the decision, cites to *Castillo* when arguing that temporal proximity should be measured from the time she actually exhausts STD and PLOA appeals, as opposed to the time at which she engages in protected conduct. (*See* Doc. 27 at 25). However, that is not a proper interpretation of *Castillo*. 467 F. App'x at 862.

F.3d 1279, 1282 (11th Cir. 1999) ("the adverse employment action must follow the statutorily protected conduct.").

On approximately December 22, 2014, Defendant denied Plaintiff's request to extend her STD benefits beyond December 22, after concluding that the medical documentation submitted with her request for such an extension was inadequate under Defendant's policy. Specifically, Burbank and Davis determined that Plaintiff's leave would not be extended because the paperwork she submitted did not provide any objective medical documentation supporting her request to extend her return date, nor did the medical documentation show any exceptional circumstances warranting deviation from the MDA's optimum guidelines. (Doc. # 20-2 69-74, 77). Defendant concluded that the documentation submitted was based on Plaintiff's subjective complaints of pain, and not on objectively measurable medical evidence (such as blood work, lab reports, x-rays, or MRIs) that was required under company policy to extend STD benefits. (Doc. # 20-1 at 86-88, 93-96; Exs. 5, 7; Doc. # 20-2 at 71-72, 74). Plaintiff appealed this determination. Her appeal was denied by Defendant's STD Appeals Committee on January 12, 2015 because of the lack of objective medical evidence supporting requested extension of leave. It was not until January 13, 2015, *after* Plaintiff's requested STD extension was denied, both initially and on appeal, that the Notice of Charge of Discrimination on Plaintiff's charge was issued. And she did not join the race discrimination lawsuit until February 12, 2015.

Interestingly, Plaintiff does not claim that Defendant's *initial* denial of her STD benefits, on December 22, 2014, was retaliatory, nor does she make such a claim about the January 2015 denial of her appeal. (Doc. 27 at 27-28). And while she disagrees with those decisions, Plaintiff concedes that Defendant made a business decision that the medical documentation was inadequate for the purposes of extending her STD benefits at that time. (*Id.* at 27). However,

18

Plaintiff claims that Defendant's subsequent denials of her STD and PLOA benefits in March 2015 and April 2015 arose under different circumstances and, as a result, Defendant was no longer merely continuing to apply certain decisions already made. That argument holds no water. If Defendant determined, *before* Plaintiff engaged in any protected activity, that her claim for STD was not supported by objective evidence, it does not follow that when Defendant continued to hold that view, that assessment equaled unlawful retaliation.

Plaintiff also argues that the medical evidence she submitted in support of her request to reconsider her STD extension was of a different character than the medical evidence she had previously submitted. The court disagrees. As discussed above, in January 2015, Defendant rejected Plaintiff's STD extension because the medical evidence she submitted was based on her doctor's report of Plaintiff's subjective reports of pain and lack of strength. In March 2015, Defendant once again rejected Plaintiff's request for a STD extension because it was again based on her doctor's report of Plaintiff's subjective reports of pain and lack of strength. (Doc. 20-1 at 88). Plaintiff argues that this second rejection was retaliatory. (Doc. 27 at 30-32). But that argument is without merit. In both instances, the medical documentation was based on Plaintiff's subjective reports of pain and feelings about relative strength; both evaluations followed her doctor's physical inspection of Plaintiff; and Defendant concluded that neither evaluation provided an objectively verifiable medical test or diagnosis.  Despite Plaintiff's opinion that Defendant's objective medical requirement was "questionable at best," Defendant applied this requirement equally, both *before* and *after* Plaintiff's protected conduct. (Doc. 27 at 29).

Plaintiff attempts to distinguish the "type" of medical information she provided after her protected conduct from that which she submitted previously. In doing so, Plaintiff points to her February 26, 2015, submission which contained Dr. Emblom's recovery "PLAN." Although

Plaintiff asserts that the "PLAN" satisfied Defendant's objective criteria, Defendant determined that the plain language of it suggests otherwise: Plaintiff's "PLAN" was not even personalized. Rather, her predicted absence from work under the PLAN was expressly based on the length of a recovery period "[o]n average after rotator cuff repair." (Doc. # 20-1 Ex, 18).

As to Defendant's rejection of her PLOA application in April 2015, Plaintiff argues that this was retaliatory because it occurred only after she engaged in protected conduct. (Doc. # 27 at 31-32). It is undisputed that Plaintiff's PLOA application was, in fact, rejected for the first time in April 2015. (Doc. # 31 at 10-11). However, Plaintiff testified that she did not apply for PLOA in December 2014 or January 2015, because she had been told that she was unable to extend medical leave through a PLOA, and to avoid that projected rejection, she never applied for the benefit. (Doc. # 20-1 at 42). Although Burbank has suggested that Plaintiff had the option of applying for PLOA benefits, this is a distinction is without a difference. A suggestion to apply for a particular benefit does not amount to a pre-approval or guarantee that the application will be granted. And, even if Burbank suggested the benefit may be available, that does not negate Defendant's ability to interpret and apply its company policy or determine that it's PLOA was not available to extend medical leave.  The policy existed in the same form both before Plaintiff engaged in protected conduct, and afterward.

Because Plaintiff failed to demonstrate the causation element of her *prima* facie case in an alternative manner, Defendant's Motion for Summary Judgment is due to be granted.

(3)    <b>Any Existing Causal Link was Broken by Intervening Acts</b>

Even if Plaintiff could otherwise establish causation (and, to be clear, she has not), Defendant's determination (consistent with its earlier assessment) that Plaintiff's submission of medical documentation was inadequate broke any purported causal link between her protected

20

activity and her eventual termination. *See Hankins v. AirTran Airways, Inc.*, 237 F. App'x 513, 520-21 (11th Cir. 2007) (finding plaintiff's intervening act severed the causal connection for her *prima facie* case between her initial complaint of discrimination and the employer's decision to terminate her employment).

As discussed above, Defendant's policy required objective medical evidence to support an extension of STD benefits.  The record indicates that policy has been uniformly enforced, and Plaintiff was aware of the policy's requirements. Defendant rejected Plaintiff's request for an extension of STD benefits based on inadequate medical documentation prior to her protected conduct.  After filing her EEOC Charge and lawsuit, Plaintiff continued to submit similarly deficient medical documentation (*i.e.*, documents that were based on her subjective complaints of pain upon her doctor's cursory inspection). (*See* Doc. # 20-1 at 88). Defendant provided Plaintiff with multiple opportunities to correct the deficiencies in her medical documentation. However, without proper supplementation, Defendant again rejected Plaintiff's request because it determined the subsequently-provided medical documentation was no more objective than that which was previously rejected.  Because Plaintiff's absences were not covered by any other leave policy, her employment was eventually terminated according to Defendant's company policy. Defendant argues that its conclusion that Plaintiff had continued to submit inadequate documentation severed any causal connection which may have existed between her alleged protected activity and her termination.  The court agrees.

In *Fleming v. Boeing Company,* 120 F. 3d 242 (11th Cir. 1997), the Eleventh Circuit held that the employee had failed to establish causation when the employer refused to hire her for a permanent position shortly after she had filed a complaint of sexual harassment.  This conclusion was warranted despite temporal proximity because it was clear from the record that the plaintiff

failed to meet the employer's qualifications for permanent employment. *Fleming*, 120 F. 3d 242 at 248. *See also Rodgers v. Time Customer Serv. Inc.*, No. 8:10-cv-263, 2011 WL 2160554 (M.D. Fla. June 1, 2011) (holding that there was no *prima facie* case, despite five weeks between petition for benefits and adverse action, because Plaintiff's medical records, submitted after the protected conduct, did not support the need for leave); *Mundale v. Lockheed Martin Corp.*, No. 8:08-cv-217, 2009 WL 179632 at *4 (M.D. Fla. Jan. 26, 2009) ("Mundale was not terminated until after Cigna denied her request for short-term disability benefits and she refused to return to work or provide medical documentation excusing her from work … [Therefore] Mundale's claim fails because she has not established a *prima facie* case of unlawful termination under Section 510.").

Plaintiff's arguments regarding intervening acts fail to address this issue head on. (Doc. 23-26). She has not demonstrated that Defendant's conclusion that her subsequently-provided documentation was not of a more objective character (than that which Defendant already rejected as subjective) evidences retaliation. Before Plaintiff engaged in any protected activity, Defendant had already determined that the documentation she had provided was not objective in character and did not support her request for leave. It continued to hold to that interpretation of its policies afterward. *See Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir. 1984) ("Title VII does not take away an employer's right to interpret its rules as it chooses . . . ."); *see Jones v. Bessemer Carraway Medical Center*, 137 F.3d 1306, 1311-12 (11th Cir. 1998) (concluding that Plaintiff's proposed comparators were insufficiently similar to a terminated employee because the defendant was entitled to interpret its rules to classify taking a day off that was denied as an attendance violation, instead of insubordination), *superseded in part on other grounds on denial of rehearing*, 151 F.3d 1321 (11th Cir. 1998).

Finally, Plaintiff also argues that Defendant's reliance on the Eleventh Circuit's *Fleming* decision is misplaced.  Plaintiff asserts that *Fleming* establishes "what 'objective' evidence is." (Doc. 27 at 24-25). *See Fleming*, 120 F. 3d 242. Defendant responds that "the Court in *Fleming* applied to the law to the employer's testing standard at issue, and nowhere does the Court address, let alone analyze, "what 'objective' evidence is," particularly as applied by [Defendant] under its STD plan" at issue here. (Doc. 31 at 10, citing *Fleming*, 120 F.3d at 248). The court agrees with Defendant's reading of *Fleming*.

For the above reasons, the court finds that, even if Plaintiff had presented evidence suggesting a causal link, intervening acts broke that link. Accordingly, for this additional reason, Defendant is entitled to summary judgment.

### B.    Plaintiff Has Not Established that Defendant's Reasons for her Termination were a Pretext for Retaliation

Lastly, even if Plaintiff had established a *prima facie* case of retaliation (and, to be clear, she has not), Plaintiff has failed to establish that the reasons given for her termination were a pretext for retaliation. Plaintiff has presented no evidence in the form of comments, comparators, or otherwise, that show that the reasons articulated for her termination were not the real reasons for her termination and that retaliation was the real reason for her termination.

Once a plaintiff establishes a *prima facie* case, the defendant employer "must proffer a legitimate, non-retaliatory reason for the adverse employment action." *Olmsted v. Taco Bell Corp.,* 141 F.3d 1457, 1460 (11th Cir.1998). "The plaintiff bears the ultimate burden of proving by a preponderance of the evidence that the reason provided by the employer is a pretext for prohibited, retaliatory conduct." *Id.*

To establish pretext, a plaintiff must "present concrete evidence in the form of specific facts" showing that the defendant's proffered reason was pretextual. *See Bryant v. Jones*, 575

F.3d 1281, 1308 (11th Cir. 2009); *see also Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 771 (11th Cir. 2005) (A plaintiff's evidence of pretext "must reveal such weaknesses, implausibilities, inconsistencies, incoherences or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence."). "If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1088 (11th Cir. 2004). Conclusory allegations and assertions are insufficient. *See Bryant*, 575 F.3d at 1308.

Plaintiff has failed to present evidence to show that the legitimate, non-retaliatory reason Defendant provided for her termination was false, and, instead was a mere pretense for retaliation.   As discussed above, Defendant has presented evidence of its legitimate, non-retaliatory reason for terminating Plaintiff's employment. Plaintiff exhausted her STD leave, then exhausted her FMLA leave, and then, in turn, exhausted all of her vacation time. Thereafter, however, Plaintiff was unable to cover her continued time off from work.  Rather than terminate Plaintiff's employment because of her unapproved absences, Defendant provided Plaintiff with several opportunities to submit objective medical evidence supporting an extension of STD leave or to apply for a PLOA. Defendant concluded that Plaintiff submitted inadequate medical evidence and did not qualify for a PLOA.

In response to this evidence, Plaintiff has presented no evidence that other, similarly situated employees who had not engaged in protected conduct were treated more favorably with regard to STD leave extensions. In fact, record evidence shows that Defendant terminated two other employees because they, like Plaintiff, failed to provide the objective medical documentation required under company policy to continue STD leave. (Doc. # 20-3 at ¶ 37). Nor has Plaintiff presented any other evidence to rebut Burbank's testimony (1) that he was not

aware of Plaintiff's protected conduct, and (2) that he was not aware of any occasion where Defendant extended medical leave pursuant to a PLOA. (Doc. # 20-3 at ¶ 35).

Further, Plaintiff has presented no evidence of any comments suggesting a retaliatory motive, nor any evidence that Plaintiff expressed concern to Defendant that she was being retaliated against as a result of her protected conduct. (Doc. # 20-1 p. 225).  Rather, Plaintiff merely argues that her medical evidence was "objective."   Simply put, her response to Defendant's evidence is a disagreement with Defendant's interpretation of its policies.

Supreme Court and Eleventh Circuit precedent hold that a "[t]o demonstrate pretext, a plaintiff must show that the defendant's proffered reason is false, and that the true reason was retaliatory." *Rose v. Wal-Mart Stores E., Inc.*, 631 F. App'x 796, 799 (11th Cir. 2015), citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. at 515. Plaintiff "is not allowed to recast an employer's proffered nondiscriminatory reason or substitute his business judgment for that of the employer." *Chapman v. Al. Transp.*, 229 F. 3d 1012, 1030 (11th Cir. 2000).   "The plaintiff must meet the reason proffered [by his employer] head on and rebut it." *Crawford v. City of Fairburn, Ga.*, 482 F.3d 1305, 1308 (11th Cir. 2007).  Plaintiff has failed to do so here.

Moreover, even if the court were to find that Defendant was mistaken in its determination that the medical evidence was subjective, or mistakenly found that Plaintiff was ineligible for PLOA, such a mistake alone is not sufficient to show pretext.  Evidence that Defendant was mistaken does not establish that its reasons were both false and a pretext for retaliation. In the words of the Eleventh Circuit, "When we hack back the thicket of factual disputes and excise [Plaintiff's] conclusory allegations, we are left with nothing more than a routine disagreement between employer and employee." *Flowers v. Troup Cty., Ga., Sch. Dist.*, 803 F.3d 1327, 1330 (11th Cir. 2015); *see also Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002) (explaining

that the pretext inquiry is not concerned with whether the employer's decision was "prudent or fair," but instead with whether it was motivated by an unlawful animus). This is particularly the case here, where Defendant reached this conclusion *before* Plaintiff even engaged in protected activity.

Finally, Plaintiff protests that she is not questioning Defendant's business judgment, but rather its motivation.  She asserts that she has provided sufficient evidence for a fact finder to determine that a retaliatory motivation was behind Defendant's decision. However, what Plaintiff has not provided is any Rule 56 *evidence* in support of her contention.  Plaintiff has presented only her own disagreement with the way that Defendant exercised its "business judgment" in interpreting its policies. As Plaintiff correctly points out, the "business judgment [rule] is not a free pass" for employers to escape liability when interpreting policies in a retaliatory fashion.  (Doc. 27 at 22-23).  But an employer is entitled to interpret its own policies, *see* Nix, 738 F.2d at 1187, and Plaintiff has not presented evidence that Defendant's articulated reasons for its decisions were false, nor has she offered evidence showing that Defendant was motivated by retaliatory animus. *Flowers,* 803 F.3d at 1337-38.  Therefore, Plaintiff has failed to establish pretext. Accordingly, for this alternative reason, Defendant's Motion for Summary Judgment is due to be granted.

## V.    CONCLUSION

For the reasons set forth above, Plaintiff has not only failed to establish a *prima facie* case of retaliation under 42 U.S.C. § 1981, but even if she had, she has failed to establish pretext. Therefore, Defendant's Motion for Summary Judgment (Doc. # 18) is due to be granted.  A separate order will be entered.

DONE and ORDERED this September 23, 2016.

_____
R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE